# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
April 15, 2015 Session

## AUTO-OWNERS INSURANCE COMPANY v. VANESSA HOLLAND, ET AL.

### Appeal from the Circuit Court for Franklin County
### No. 18059cv     Buddy D. Perry, Judge

_____

### No. M2014-01630-COA-R3-CV – Filed February 12, 2016

_____

An insurance company which issued a commercial general liability policy to the owner of a lawn care business sought a declaratory judgment that the policy did not provide coverage for a claim brought by the parent of a child who was injured by the gate on a trailer which was used to transport lawn care equipment.  The company appeals the denial of its motion for summary judgment.  Having determined that the insurance policy does not provide coverage for the claim at issue, we reverse the judgment of the trial court and remand with instructions to grant summary judgment in favor of the insurance company.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

John J. Griffin, Jr. and Michael A. Johnson, Nashville, Tennessee, for the appellant, Auto-Owners Insurance Company.

Andy Peters Davis, Winchester, Tennessee, for the appellees, Vanessa Holland and Jezekial Valentin.

# OPINION

## I. FACTUAL BACKGROUND

This appeal involves the scope of coverage of a commercial general liability insurance policy issued by Auto-Owners Insurance Company ("Auto-Owners") to Jarred Boles d/b/a Jarred Boles Lawn Ranger (collectively "Jarred Boles"), a lawn care business located at 111 Alabama St., Huntland, Tennessee. The business address was also the home address of Jarred Boles, where he lived with his parents, Mark and Judy Boles ("the Boles"). As part of his business, Jarred Boles used a truck and utility trailer which were owned by his father and kept on the premises; the trailer was missing one of two pins used to keep the trailer gate from falling open.

A two-year old child, Jezekial Valentin ("Jezekial"), was injured while visiting in the Boles' home on May 8, 2009; he had removed the remaining pin from the trailer gate, which then fell and struck him on the head. Vanessa Holland, Jezekial's mother, subsequently filed three suits seeking to recover for Jezekial's injuries. The first suit was against the Boles, asserting that they were negligent in supervising Jezekial and seeking damages in the amount of $150,000. The second, against Jarred Boles individually and d/b/a Jarred Boles Lawn Ranger, asserted negligence in keeping the premises in a dangerous condition, in keeping the trailer gate in an unsafe and dangerous condition, and in failing to warn of a dangerous condition; the suit sought $2,150,000 in damages. Jarred Boles' request for coverage under the Auto-Owners policy was declined.[1]

Auto-Owners filed a declaratory judgment action naming Ms. Holland, Jezekial, the Boles, Jarred Boles, and State Farm Mutual Automobile Insurance Company, which provided automobile liability coverage to the Boles and Jarred Boles, as defendants.[2] Auto-Owners sought a declaration that the policy it issued did not provide coverage to Jarred Boles or the Boles in either of Ms. Holland's lawsuits.[3]

---

[1] The third suit was a health care liability action brought against the ambulance business and emergency medical technicians who attended to Jezekial when he was injured. No issue relating to the third suit is presented in this appeal.

[2] Tenn. Code Ann. § 29-14-107(a), requires that "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceedings." The complaint alleged that State Farm Fire and Casualty Insurance Company and State Farm Mutual Automobile Insurance Company provided automobile liability coverage to the Boles and Jarred Boles.

[3] In the alternative, Auto-Owners sought a declaration that State Farm was the automobile insurer for the Boles and Jarred Boles, and that State Farm's coverage was primary and Auto-Owners' coverage, if any, was excess. On March 24, 2011 the court entered a Stipulation and Agreed Order of Dismissal as to State Farm.

In due course Auto-Owners moved for summary judgment on the grounds that the policy did not provide coverage for the injuries sustained by Jezekial and that Auto-Owners had no duty to defend the Boles and/or Jarred Boles in the tort actions which had been filed by Ms. Holland. In support of its motion, Auto-Owners filed a Statement of Uncontested Facts, the affidavit of Thomas W. Shumate IV, counsel for Auto-Owners, and several exhibits.[4] In response to the motion, Ms. Holland filed a response to the Statement of Uncontested Facts, a copy of the March 24, 2011 order, and a copy of the second amended complaint which had been filed against Jarred Boles individually and d/b/a Jarred Boles Lawn Ranger.[5]

After a hearing on the motion, the court issued a letter which was incorporated into the final order. The court denied Auto-Owners' motion, holding that the incident was within the products completed operations coverage which it held the policy provided, that the exclusions in the policy were ambiguous and would be construed against Auto Owners, and that the injury arose out of the business conduct of Jarred Boles because "every element of causation goes towards the business."

Auto-Owners appeals, stating the following issues:

1. Whether the trial court erred in *sua sponte* granting summary judgment to the Appellees and holding there is coverage under the Appellant's commercial general liability policy based on the definition of "products-completed operations hazard?"
2. Whether the trial court erred in holding the policy's explicit automobile exclusion is inapplicable where the injury arose from a truck and trailer?

## II. STANDARD OF REVIEW

Summary judgment is an appropriate vehicle for resolving a case where a party can show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04; *see also* Tenn. Code Ann. § 20-16-101.[6] A trial court's decision on a motion for summary judgment enjoys no

---

[4] The exhibits included copies of: the policy issued by Auto-Owners and excerpts therefrom; the complaint filed on May 6, 2010 by Ms. Holland against the Boles; the complaint filed on January 5, 2011 by Ms. Holland against Jarred Boles individually and d/b/a Jarred Boles Lawn Ranger; the complaint filed on April 2, 2012 in the health care liability action; the March 24, 2011 order which adopted the stipulations of Auto-Owners and State Farm; the depositions of Mark Boles, Judy Boles, and Ms. Holland; Jarred Boles', Mark Boles', Judy Boles', and Ms. Holland's Responses to Auto-Owners' Requests for Admissions; and the affidavits of Mark Boles and Jarred Boles.

[5] The Boles and Jarred Boles also filed a response to Auto-Owners' motion in which they adopted Ms. Holland's response to Auto-Owners' statement of facts.

[6] This action was filed on October 25, 2010. Tenn. Code Ann. § 20-16-101, applicable to summary

presumption of correctness on appeal. *Draper v. Westerfield*, 181 S.W.3d 283, 288 (Tenn. 2005). We review the summary judgment decision as a question of law. *Finister v. Humboldt Gen. Hosp*., *Inc.*, 970 S.W.2d 435, 437 (Tenn. 1998). Therefore we review the record *de novo* and make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been met. *Eadie v. Complete Co., Inc*., 142 S.W.3d 288, 291 (Tenn. 2004).

Neither party contends that a genuine issue of material fact for trial exists.[7] Consequently, we resolve the issues presented as matters of law.

## III. DISCUSSION[8]

### A. Products-Completed Operations Hazard

In denying Auto-Owners' motion for summary judgment, the court ruled:

I accept defendants' counsel's arguments. The policy is open to interpretation and should be construed against the company. Therefore, I find that the policy grants coverage. It is my conclusion that products completed operations hazard coverage exists independent of the coverage provided in section A of the policy. Further, I find that the exclusions argued by plaintiff's counsel are not applicable.

In response to this holding Auto-Owners contends that the "'[P]roducts-completed operations hazard' is not an independent source of <u>coverage</u>, but rather is a measure of <u>limits</u>." (emphasis in original).

The resolution of this issue requires us to interpret the provisions in the policy. In *Standard Fire Ins. Co. v. Chester O'Donley & Associates, Inc.*, we set forth the following procedure to be used when construing insurance contracts:

---

judgments, was enacted by 2011 Tenn. Pub. Acts Ch. 498, §1, became effective July 1, 2011, and is applicable to cases filed on or after that date.

[7] Ms. Holland, Jezekial Valentin, Judy Boles, Mark Boles, and Jarred Boles are listed in the caption of the appeal as Appellees; however, only Ms. Holland and Jezekial Valentin have filed a brief. For the sake of clarity, Ms. Holland will be referred to as the party opposing Auto-Owners' appeal.

[8] The term "coverage," or variations thereof, is used in differing contexts and in varying respects in the record. In order to avoid confusion, we will use the term "coverage" (or a contextual variation thereof) when construing and interpreting the policy; we will use the term "indemnification" (or a contextual variation thereof) when discussing whether the policy insured Jarred Boles for the particular activities at issue.

4

Insurance contracts are subject to the same rules of construction and enforcement as contracts generally. In the absence of fraud or mistake, they should be interpreted as written and their terms should be given their natural and ordinary meaning. Because insurers are strictly accountable for the language in their contracts, ambiguous language will be construed against the insurer and in favor of the insured.

Insurance policies should be construed as a whole in a reasonable and logical manner. The essential components of a general liability insurance policy include (1) the declarations, (2) the insuring agreements and definitions, (3) the exclusions, (4) the conditions, and (5) the endorsements. When coverage questions arise, these components should be construed in the above order to avoid confusion and error.

The insuring agreement sets the outer limits of an insurer's contractual liability. If coverage cannot be found in the insuring agreement, it will not be found elsewhere in the policy. Exclusions help define and shape the scope of coverage, but they must be read in terms of the insuring agreement to which they apply. Exclusions can only decrease coverage; they cannot increase it.

Exclusions should also be read seriatim. Each exclusion reduces coverage and operates independently with reference to the insuring agreement. Exclusions should not be construed broadly in favor of the insurer, nor should they be construed so narrowly as to defeat their intended purpose. Once an insurer has established that an exclusion applies, the burden shifts to the insured to demonstrate that its claim fits within an exception to the exclusion.

972 S.W.2d 1, 7-8 (Tenn. Ct. App. 1998) (internal citations omitted).

### *1) Policy provisions pertinent to this issue*

The declarations page of the policy contains the following schedule of monetary limits under the banner "Commercial General Liability Coverage":

| | |
|---|---|
| General Aggregate | $2,000,000 |
| (Other Than Products-Completed Operations) | |
| Products-Completed Operations Aggregate | 2,000,000 |
| Personal Injury and Advertising Injury | 1,000,000 |
| Each Occurrence | 1,000,000 |
| Damage to Premises Rented to You (Fire Damage) | 50,000 Any One Premises |
| Medical Payments | 5,000 Any One Person |

Section I of the policy sets forth three "Coverages," each of which contains a separate insuring agreement and set of exclusions: Coverage A, Bodily Injury and Property Damage Liability; Coverage B, Personal Injury and Advertising Injury Liability; and Coverage C, Medical Payments. The insuring agreement at issue in this case is found at Coverage A and states in pertinent part:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. We may at our discretion investigate any claim or "occurrence" and settle any claim or "suit" that may result. But:

> > (1) The amount we will pay for damages is limited as described in Section III – Limits of Insurance; . . .

Paragraph 3 of Section III states:

> The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard."

The "Definitions" section of the policy is Section V; paragraph 17 thereof defines "products-completed operations hazard" as follows:

> a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

> > (1) Products that are still in your physical possession; or

> > (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

> > > (a) When all of the work called for in your contract has been completed.

> > > (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

6

(c)     When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or sub-contractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b.  Does not include "bodily injury" or "property damage" arising out of:

(1)     The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured.;

(2)     The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3)     Products or operations for which the classification, shown in the Declarations, states that products-completed operations are included.

Lastly, paragraph 27a of Section V defines "your work" to be: "(1) Work or operations performed by you or on your behalf; and (2) Materials, parts or equipment furnished in connection with such work or operations."

*2) Analysis*

Upon our reading of the policy we fail to find support for the trial court's conclusion that "products completed operations hazard coverage exists independent of the coverage provided in section A of the policy." The insuring agreement for section A obligates Auto-Owners to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Pursuant to Section III, paragraph 3, where a claim is made arising out of activity within the "products-completed operations hazard" as defined in Section V, paragraph 17, a separate monetary limit of $2 million applies. The schedule of limits on the declarations page is consistent with this interpretation inasmuch as it clearly states that the Products-Completed Operations Aggregate limit is separate from the general aggregate and the other specified limits. Neither including the monetary limit on the

7

declarations page for specific products completed operations claims nor the definition of "products completed operations hazard" at Section V of the policy support the trial court's determination; the "products completed operations hazard" is part of Coverage A.[9]

### B. Coverage for Jezekial Valentin's Injury

We next address whether the policy provided coverage to Jarred Boles for the injury to Jezekial. Auto-Owners contends that there is no coverage because the automobile exclusion at Section I A, Coverages for Bodily Injury and Property Damage Liability, applies that the accident did not occur in the conduct of Jarred Boles' business, and that there is no coverage pursuant to the definition of "products-completed operations hazard" under the facts of this case. Auto-Owners also argues that there is no coverage under the policy for medical payments, and that any coverage under the Auto-Owners' policy is excess over any other insurance. We have determined that the question of whether the accident occurred in the conduct of Jarred Boles' business is dispositive and, consequently, address that issue.

As noted earlier, the insuring agreement for Coverage A provides that Auto-Owners will "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."[10] Section II(1)(a) provides that a person is an insured:

1. If you are designated in the Declarations as:

    a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

---

[9] We do not agree with Ms. Holland's argument that the $3.00 additional premium charged for the increased limits for products-completed operations hazard claims constitutes an independent source of coverage; as noted earlier, the declarations page makes clear that the $2 million products-completed operations aggregate is a coverage limit.

[10] In *Standard Fire* this court explained that CGL policies:

> [A]re designed to protect the insured against losses arising out of business operations. . . . [CGL] policies are not "all-risk" policies. They provide an insured with indemnification for damages up to policy limits for which the insured becomes liable as a result of tort liability to a third party. The risk insured by these policies is the possibility that the insured's product or work will cause bodily injury or damage to property other than the work itself for which the insured may be found liable.

972 S.W.2d at 6-7 (internal citations omitted).

The term "conduct of a business" is not defined in the policy nor is it defined by Tennessee case law, *Auto-Owners Ins. Co. v. England*, No. 3:10-CV-118, 2013 WL 3423817, at *2 (E.D. Tenn. July 8, 2013) (citing *Cincinnati Ins. Co. v. Shelby Mut. Ins. Co.*, 542 S.W.2d 822, 824 (Tenn. Ct. App. 1975); however, several jurisdictions have analyzed the insured's activity and its connection to the injury complained of to determine if the insured was engaged in the "conduct of a business." *Id.*[11] Inasmuch as the case at hand was resolved on summary judgment, we look to the evidence as we consider this issue.

We have reviewed Auto-Owners' Statement of Uncontested Facts and have determined that the following are most relevant to the issue:[12]

3.  At the time of the accident, Mark and Judy Boles' son, Jarred Boles, resided at the Premises.
***

9.  Jarred Boles left the Premises the morning of May 8, 2009, cut some lawns and then returned to the Premises late that afternoon.
***

11.  Jarred Boles used a fourteen-foot, single-axle utility trailer ("Trailer") to haul his lawn care equipment.

RESPONSE:  Admit as stated, but deny any inference or admission that the 'trailer' as referenced falls under the definition of 'auto' as it appears in the CGL policy

12.  The Truck and Trailer were owned by Mark Boles at the time of the Accident.[2]

---

[11] With respect to the term "conduct of a business," the court in *Auto-Owners Ins. Co.* stated:

> Other jurisdictions have construed the term to mean that "the insurer must have been able to reasonably foresee the liability-producing conduct as emanating from the insured's business," *Sentry Ins. Co. v. Sahlberg*, No. CA935331E, 1995 WL 809951, at *2 (Mass. Super. Mar. 28, 1995), or that there is "a causal nexus between the cause of the injury and the insured operations or business." *Selective Ins. Co. of S. Carolina v. Ferguson*, No. CIV.A. 11–74, 2011 WL 4626007, at *6 (W.D. Pa. Oct. 3, 2011).  And in *Nova Cas. Co. v. Anderson*, No. 804CV2085T27TGW, 2005 WL 3336496 (M.D. Fla. Dec.8, 2005), the court interpreted the term to mean that the activity was one that was "performed for the purpose of his business." *Id.* at *4.

2013 WL 3423817, at *2.

[12] These facts are admitted unless otherwise noted.

9

[Footnote 2 reads as follows: 2. This "fact" is undisputed for purposes of this Motion only.  Jarred Boles previously informed Auto-Owners that he purchased the Trailer for $400.00 from his father, which he now conveniently denies.]

13.  Jarred Boles did not pay his father for using the Trailer.

14. The Trailer was kept in the driveway at the Premises when not in use.
***

16.  Mark and Jarred Boles were the only ones who used the Trailer.
***

19.  Otherwise, Jarred Boles always used the Truck and Trailer for his lawn care business.
***

22.  When Jarred Boles left the Premises on the morning of the Accident around 8:00 a.m., he had a mower, weedeater, and a blower that he owned on the Trailer, and the Trailer was attached to a 2007 Chevrolet Colorado truck (the "Truck") owned by his father, Mark Boles.

23.  Jarred Boles had his father's permission to use the Trailer on the day of the Accident so that he could cut grass.

24.  On the morning of the Accident, the Trailer was already connected to the Truck, so Jarred Boles loaded his lawn care equipment and left.

25.  All he did that day between the time he left the Premises that morning until he returned that afternoon as cut some grass.

RESPONSE:  Admitted, assuming "as" was intended to be "was."

26.  When Jarred Boles returned that afternoon around 3:00 p.m., he parked the Truck and the Trailer in the driveway of the Premises.

27.  He unloaded the lawnmower and lawn equipment from the Trailer.

28.  He had no plans to use the Truck or Trailer again that day or to go out and cut some more.
***

10

34. Approximately one to two hours passed from when Jarred Boles returned to the Premises with the Trailer and when the Accident occurred.
***

36. No one other than Jarred Boles used the Truck or the Trailer on the day of the Accident.

37. Jarred Boles was the last person to use the Truck and Trailer prior to the Accident.

38. The Trailer was in the same position and same condition that Jarred Boles left it when the Accident occurred.

39. At the time of the Accident, the Truck and Trailer were parked where Jarred Boles parked them, and the Trailer was still hitched to the Truck.

40. No one was in the Truck or on the Trailer when the Accident occurred.
***

42. Jarred Boles was not in the act of parking the Truck or Trailer when the Accident occurred.

RESPONSE: Deny as stated.[13]

43. When Jarred Boles returned the Trailer to the Premises on the day of the Accident, one of the two pins that held up the trailer-gate was missing.

44. At the time of the Accident, Jarred Boles was aware that the pin on the right side of the trailer-gate had been missing for one to three months.

45. Mark Boles had not used the Trailer between the time that the trailer-gate pin was lost and the time of the accident.

46. Mark Boles was not aware that the pin was missing.

47. The gate to the Trailer and struck Cain Valentin when he pulled the lone remaining pin that was holding up the gate to the Trailer.
***

49. If the gate to the Trailer did not have just one pin in it, the Accident would not have happened.

---

[13] Defendants give no explanation or citation to the record for this response.

11

RESPONSE: Admitted as stated. However, deny any inference that the fact that the trailer had one pin was the sole cause of the accident.
\*\*\*

51. The Trailer was the instrument that caused Cain Valentin's injuries.

These facts, which Ms. Holland does not contest, demonstrate that neither Jarred Boles, Mr. Boles, nor anyone on Jarred Boles' behalf was engaged in activity that constituted work or operations in relation to the lawn care business at the time of the accident. All work regarding the lawn care business had ceased at 3:00 p.m. and the injury to Jezekial occurred one to two hours after Jarred Boles had returned the trailer to the premises. The fact that trailer had been used earlier in the day in the conduct of Jarred Boles' business does not establish the liability-producing conduct or a causal nexus between the operation of Jarred Boles' business and the injury suffered by Jezekial.

Our holding that there is no coverage renders moot Auto-Owners' contention that the court erred in not ruling on the request for a declaration that any coverage provided under the Auto-Owners policy would be excess to any other insurance.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the trial court is reversed and the case remanded with instructions to the trial court to enter judgment in favor of Auto-Owners Insurance Company.

_____
RICHARD H. DINKINS, JUDGE

12